LAW OFFICES OF
### ANTHONY P. DAVID
A PROFESSIONAL CORPORATION
101 MONTGOMERY STREET
27TH FLOOR
SAN FRANCISCO CA 94104-4132
———
TELEPHONE (415) 498-0000
FACSIMILE (415) 498-0001

May 1, 2007

*Via e-filing and Hand Delivery*
Honorable Martin Jenkins
United States District Judge
450 Golden Gate Avenue, Ctrm 11, 19th Floor
San Francisco, CA 94102-3495

    Re:  *Shevland v. United States, et al.*
    C 04-00576 MJJ

Dear Judge Jenkins:

    For the reasons expressed below, I am writing the Court to request to and including May 14 within which to serve a rebuttal report to Dr. Kelkar's April 9, 2007 report.  Earlier today, I requested of Mr. Simmons his agreement to an extension to and include May 11, but I have since learned that we need until May 14 to rebut.  Mr. Simmons has not replied to my earlier request.  As time is of the essence, and for good cause shown, I request the extension now in the hope that Mr. Simmons will stipulate or the Court will grant relief.

    At the status conference of April 10, Mr. Simmons announced that he would deliver to me a report from his liability expert, Dr. Kelkar. After reviewing that report dated April 9, forwarding it to my expert, Dr. Shattuck, and receiving feedback, it appears that Dr. Kelkar has formed new liability opinions (he will no doubt call them "damages opinions") with regard to the seatbelt defense about which he had *no* opinions and had done *no* analyses prior to the close of liability discovery last year.

    The new opinions, among others, are:

1.     Assuming Mr. Shevland was in the hypothetical upright unbelted position, "the head and face of the unbelted occupant made contact with the portions of the roll cage at closing speeds of approximately 10 mph."

2.     Assuming Mr. Shevland was in a hypothetical upright belted position at the time of impact, "the back of his head made contact with portions of the roll cage at closing speeds of approximately 3 to 7 mph (i.e. walking to jogging speeds). It is unlikely that head contacts with a padded roll bar at these speeds would create skull fractures or have the linear and rotational accelerations necessary to create axonal shear injury. It is likely that

725\050107

Honorable Martin Jenkins
United States District Judge
May 1, 2007
Page 2

      head contacts at these speeds could create bumps and bruises to the head and could possibly cause bending injuries to the neck similar to the transverse process fracture sustained by Mr. Shevland.  It is also likely that Mr. Shevland would have sustained some form of left shoulder/arm injury similar to the acromioclavicular joint separation he sustained in the subject accident irrespective of seatbelt use."

      On the assumption that Dr. Kelkar did additional work to form the bases for these new opinions, I requested of Mr. Simmons all the data files which supported those opinions. Late last week, he provided four MADYMO files, which he represented were the same files created last year as the bases for Dr. Kelkar's original opinions. I pressed him to cooperate with me to arrange for a conference call between Dr. Shattuck and Dr. Kelkar (and counsel) to clarify and be certain Dr. Shattuck had all of the relevant backup files and other materials in support of these new opinions. Mr. Simmons declined.

      Mr. Simmons informed me in emails today that "Dr. Kelkar did not perform additional simulations for his follow up report" and "Dr. Kelkar did not create any simulations or calculations the backup for which you do not already have."

      At the time of Dr. Kelkar's deposition last year, I asked questions which should have elicited these new opinions had they been based on his original work.  Dr. Kelkar unequivocally declared he had neither done the analyses nor formed opinions on the subject of the forces which would have been applied to Mr. Shevland's head or the severity of injuries to be sustained in either the belted or unbelted scenario.

      Q. Were you asked to answer the question as to the nature and extent of injuries Mr. Shevland would have sustained had he been wearing a seatbelt?

      A. Not specifically, no. (Kelkar depo 87:23-88:1).

      ***

      Q. Can you tell me, based on your own work, can you describe the forces either in Gs or pounds or Delta V [expressed in mph], however you want to describe it, the forces applied to Mr. Shevland's head, sitting in the normal belted position, as you have said, even in the normal belted position, he would have whacked his head on the rollbar on either the first or second impacts, right?

      [objection omitted]

725\050107

Honorable Martin Jenkins
United States District Judge
May 1, 2007
Page 3

      The Witness: I haven't done that analysis at this point.

      Q. Can you give me an estimate as to the forces applied to his head on the first impact?

      A. No, I would be guessing . . . **I have not done the analysis to figure out how severe these injuries would have been had he been belted, how severe they were, were he not belted in terms of forces.** That is work that is yet to be done and requires a substantial amount of analysis to do that. [Emphasis added]. (Kelkar depo 167:17-168:19).

      Based on the record as it existed when liability discovery closed, plaintiff had no need to replicate or otherwise dissect Dr. Kelkar's MADYMO methodology. But with these new opinions addressing both the forces to the head and the injuries in the belted and unbelted scenarios, it is necessary for plaintiff's expert to review and analyze each data file generated by Dr. Kelkar's simulations in order to evaluate his opinions and, if appropriate, to rebut them.

      In reviewing Dr. Kelkar's MADYMO files thus far, we have determined that the input files he gave us do not have any output instructions except for kinematic motion showing the movement of the MADYMO dummy. No velocities were requested to be outputted, and it cannot be determined, based on this preliminary review, on what Dr. Kelkar's new estimates of closing speeds between the head and the roll cage are based. It is also necessary, among other things, to run Dr. Kelkar's simulations beyond where he cut them off using varying output instructions to analyze the positions, motions, velocities, and acceleration and rotational forces applied to Mr. Shevland's head and body during each impact in the upright belted scenario.

      It will take until the end of next week to complete these and other necessary analyses, which is the reason why plaintiff requests to and including May 14 within which to provide a report rebutting Dr. Kelkar's April 9th report.

      Incidentally, Mr. Simmons had five weeks for Dr. Kelkar to respond to Dr. Shattuck's current report; if our request is granted we will have been given a like total of five weeks to rebut Dr. Kelkar. Please have your courtroom deputy contact Anja Chan of my office at (415) 498-0002 to inform us of your decision in a timely manner. Thank you for your consideration.

      Very truly yours,

      /s/
      Anthony P. David

725\050107      Dated: 5/3/2007

*IT IS SO ORDERED*
*Judge Martin J. Jenkins*
*UNITED STATES DISTRICT COURT — NORTHERN DISTRICT OF CALIFORNIA*